IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                          3:12-cv-01463-MA

                 Plaintiff,                OPINION AND ORDER

    v.

$17,980.00 IN UNITED STATES
CURRENCY, *in rem*,

        Defendant.


S. AMANDA MARSHALL
United States Attorney
District of Oregon
ANNEMARIE SGARLATA
Assistant United States Attorney
1000 Southwest Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Plaintiff

BRIAN L. MICHAELS
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401

    Attorney for Claimant Donna Dickson

MARSH, Judge

    This civil forfeiture proceeding comes before the Court on

Plaintiff's Motion for Summary Judgment or to Strike Claim (#31)


1 - OPINION AND ORDER

and Claimant Donna Dickson's Amended Motion for Leave to File Amended Claim (#36).  For the reasons set forth below, the Court denies Claimant's Motion to Amend and grants Plaintiff's Motion for Summary Judgment or to Strike Claim.

## FACTUAL BACKGROUND

The material facts are undisputed and taken from the parties' submissions on summary judgment, the Declaration of Mark Cromwell (#2) submitted along with Plaintiff's Complaint, and the Declaration of Claim (#6) filed by Claimant Donna Dickson.

On January 27, 2012, Officer Rob Havice of the Medford Police Department and a narcotics-detection canine were inspecting packages being offloaded from an airplane and sorted for delivery via FedEx.  The narcotics-detection canine alerted to a package addressed to Claimant.  Based on the alert of the narcotics-detection canine, Officer Havice seized the box and obtained a warrant to search the package.

Before opening the package, Detective Cromwell noted that it was addressed to Claimant at an address on Jaynes Drive in Grants Pass, Oregon.  Detective Cromwell noted the shipper's address was listed as "G & CO." with an address in Astoria, New York.  The phone number associated with the sender's address was the same as that listed for the recipient.  In addition, Det. Cromwell noticed the exterior of the box was heavily taped with all of the edges and seams covered by multiple layers of packing tape.  When Officer

Havice opened the box, the officers found a second box with the seams and edges heavily taped in a similar fashion.  Upon opening the second box, the officers located the Defendant Currency sealed inside several layers of vacuum-sealed plastic.  The officers found a dish soap-like substance with a heavy fragrance between the layers of vacuum-sealed plastic.

After Plaintiff instituted this forfeiture proceeding on August 13, 2012, Claimant submitted a Declaration of Claim on September 24, 2012, asserting a possessory interest in the Defendant Currency.  When asked in her deposition to explain her possessory interest in the Defendant Currency, Claimant responded "[i]t's my money."  Claimant's Dep. at 26.  Claimant invoked her Fifth Amendment privilege against self-incrimination when asked to explain "how it is [her] money," why she believes it is her money, the circumstances surrounding her possessory interest in the currency, and under what circumstances she acquired an ownership interest in her currency.  Claimant Dep. at 26, 34.  Claimant also invoked her Fifth Amendment rights to avoid answering questions on a wide variety of subjects, including whether she was expecting the parcel, whether she was familiar with the listed sender or the sender's address, whether the Defendant Currency was ever in her possession, whether anybody had asked her to receive a parcel on their behalf in the past ten years, and whether she had any documentation showing that the Defendant Currency belonged to her.

3 - OPINION AND ORDER

Claimant Dep. at 10-13, 26, 28, 34, 37, 41, 47.  In sum, aside from testifying the Defendant Currency was her money, Claimant refused to answer any questions about her relationship to the Defendant Currency.

In her responses to Plaintiff's First Request for Production Claimant asserted that she had no personal or business income tax returns or wage or earnings statements for the last five years. Claimant's Resp. to Pl.'s First Request for Prod. at 3.  Claimant invoked, among other objections, her Fifth Amendment privilege to avoid responding to various requests concerning financial documents, business records, and additional tax forms.  Claimant's Resp. to Pl.'s First Request for Prod. at 4-9.

On June 10, 2014, after the parties litigated a Motion to Dismiss and completed discovery, Claimant moved to suppress all evidence obtained from the package and Plaintiff moved to strike the claim and, in the alternative, for summary judgment on the grounds that Claimant lacked standing.  On July 14, 2014, along with her Response (#35) to Plaintiff's Motion to Strike or for Summary Judgment, Claimant filed a Motion for Leave to File Amended Claim (#36) seeking to allege an ownership interest in the Defendant Currency instead of her previously pled possessory interest.  On August 4, 2014, Plaintiff submitted its Reply Memorandum and a response opposing Claimant's Motion for Leave to File Amended Claim.  The Court took Plaintiff's Motion for Summary

Judgment or to Strike Claim and Claimant's Motion for Leave to File Amended Claim under advisement, withholding consideration of Claimant's Motion to Suppress Evidence until after resolution of the current Motions, if necessary.

**DISCUSSION**

I.   **Claimant's Motion for Leave to File Amended Claim**

When a party moves to amend a pleading outside the period for amendment as a matter of course, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); United States v. $11,500.00 in U.S. Currency, 710 F.3d 1006, 1013 (9th Cir. 2013). Factors relevant to whether amendment shall be permitted are undue delay in filing the motion to amend and delay or extension of the proceedings, prejudice to the non-moving party, bad faith on the part of the moving party, and futility of the proposed amendment. See $11,500,000 in U.S. Currency, 710 F.3d at 1009; AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir. 2006); Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999); Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986). "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Acri, 781 F.2d at 1398.

///

**A.    Undue Delay in Filing the Motion to Amend**

In evaluating undue delay, the court considers "'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'" AmerisourceBergen Corp., 465 F.3d at 953 (quoting Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990)). The Ninth Circuit has "held that an eight-month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable." Id. (citing Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 799 (9th Cir. 1991)). A motion to amend made near or after the close of discovery necessitates reopening discovery and therefore delays the proceedings. Solomon v. N. Am. Life and Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir. 1998).

In this case, Claimant certainly knew the alleged facts - her testimony that the Defendant Currency is "[her] money" - at the time she filed her original claim. Claimant Dep. at 26. Moreover, the difference between alleging an ownership interest and alleging a possessory interest is a fundamental concept at the pretrial stages of civil forfeiture proceedings, such that any competent attorney in a forfeiture action would appreciate the well established distinction between the interests and the significance thereof. See, e.g., United States v. $999,830.00 in U.S. Currency, 704 F.3d 1042, 1042-43 (9th Cir. 2012); United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 637-40 (9th Cir. 2012);

United States v. $100,348.00 in U.S. Currency, 354 F.3d 1110, 1119 (9th Cir. 2004).

Claimant has provided no reason for the nearly two-year delay between the filing of her claim and her Motion for Leave to File Amended Claim.   In light of the straightforward but significant factual and legal nature of Claimant's proposed amendment, the two-year delay between the filing of the original claim and the instant motion to amend is manifestly unreasonable.   Moreover, considering discovery has consumed a substantial portion of the two years of the pendency of this proceeding, reopening discovery at this point would cause further unreasonable delay in the proceedings. Accordingly, this factor militates strongly toward denying the Motion for Leave to Amend Claim.

**B.   Prejudice to Plaintiff**

"A need to reopen discovery and therefore delay the proceedings supports a . . . finding of prejudice from a delayed motion to amend." Lockheed Martin Corp., 194 F.3d at 986 (citing Solomon, 151 F.3d at 1139).   The Ninth Circuit Court of Appeals has affirmed a finding of prejudice when the amendment comes "at the eleventh hour, after discovery was virtually complete and [the defendant's] motion for summary judgment was pending before the court." Roberts v. Arizona Bd. of Regents, 661 F.2d 796, 798 (9th Cir. 1981).

This case is even further along in the proceedings than that which the Ninth Circuit found prejudicial in Roberts, as discovery was complete and Plaintiff's Motion for Summary Judgment or to Strike Claim was pending when Claimant moved to amend her claim. Plaintiff asserts that it would have conducted additional discovery on a variety of issues had Claimant pled an ownership interest rather than a possessory interest. Pl.'s Reply at 4. Indeed, the showing a claimant must make at summary judgment to sustain an alleged ownership interest is different than that which a claimant must make to demonstrate standing based on a possessory interest. See $999,830 in U.S. Currency, 704 F.3d at 1042-43. As discussed in full below, Claimant's refusal in discovery to provide any explanation for her possessory interest in the Defendant Currency is fatal to her claim as pled. See id. Thus, Plaintiff's decision not to pursue additional discovery was prudent in light of Claimant's pleadings. Claimant's proposed eleventh-hour amendment would, at a minimum, force the Court to reopen discovery and would therefore prejudice Plaintiff. See Lockheed Martin Corp., 194 F.3d at 986; Roberts, 661 F.2d at 798.

Claimant argues, however, that Plaintiff was not prejudiced because Claimant testified in her deposition that it was her money, putting Plaintiff on notice of Claimant's ownership interest. Claimant's Dep. at 26. That Plaintiff may have had some *factual* notice of Claimant's allegation of ownership, however, does not

equate to notice that Claimant would *plead* an ownership interest, especially in light of the fact that she had not done so for the nearly two-year pendency of this action. A party must be able to rely on its opponent's pleadings in guiding discovery. See McHenry v. Renne, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (providing that an affirmative pleading must "fully set[] forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery."). Thus, the fact that Plaintiff arguably had notice of Claimant's allegation of *factual* ownership of the Defendant Currency does not mitigate the prejudice to Plaintiff in relying on Claimant's pleading of a possessory interest while conducting discovery. To hold otherwise would force parties to conduct often wasteful discovery on myriad unpled, but arguably factually-plausible claims.

In sum, Plaintiff would be prejudiced by permitting Claimant to change her standing theory at this late stage of the proceedings because doing so would necessitate the reopening of discovery. Accordingly, this factor militates toward denying Claimant's Motion for Leave to Amend Claim.

C. **Bad Faith**

Bad faith or gamesmanship on the part of the moving party is another potential reason to deny a motion to amend a pleading. See $11,500.00 in U.S. Currency, 710 F.3d at 1012; AmerisourceBergen Corp., 465 F.3d at 951. While the Court cannot be certain about

Claimant's subjective motivations for waiting almost two years to amend her claim to plead an ownership interest, the factual and legal background suggest it was done in an effort to gain a tactical advantage.

As noted, the legal significance of the distinction between an ownership interest and a possessory interest would be readily apparent to any competent forfeiture attorney. Moreover, the factual basis of Claimant's newly alleged ownership interest has unquestionably been known to Claimant since before she filed her original Claim. Finally, Claimant has offered no explanation for the delay in pleading her ownership interest.

In light of the differences in the standing theories and the foreseeable differences in Plaintiff's discovery and litigation strategy based on whether Claimant alleged a possessory or ownership interest, it is difficult to conceive of any purpose other than gamesmanship behind Claimant's failure to plead her ownership interest. Thus, although the Court cannot be certain of Claimant's subjective motivations, the considerable length of the delay, Claimant's awareness of the facts underlying the amendment, the straightforward legal significance of the change in standing theory, and the foreseeable impact on Plaintiff's discovery strategy all suggest a tactical motivation for Claimant's eleventh-hour change in her standing theory. Thus, this factor weighs in favor of denying Claimant's Motion for Leave to Amend Claim.

D.    Futility of Amendment

"'Futility of amendment can, by itself, justify the denial of a motion for leave to amend.'" Gonzalez v. Planned Parenthood of Los Angeles, 759 F. 3d. 1112, 1116 (9th Cir. 2014)(quoting Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)).  Whether Claimant's alleged ownership interest would be sufficient to establish standing that would survive Plaintiff's Motion for Summary Judgment is a close question.  In addition to the claimant's pleadings, "[a] claimant asserting an ownership interest in the defendant property . . . must also present 'some evidence of ownership' beyond the mere assertion in order to survive a motion for summary judgment." $133,420.00 in U.S. Currency, 672 F.3d at 639 (quoting United States v. $81,000.00 in U.S. Currency, 189 F.3d 28, 35 (1st Cir. 1999)).  "The fact that property was seized from the claimant's possession, for example, may be sufficient evidence, when coupled with a claim of ownership, to establish standing at the summary judgment stage." Id.

The only evidence in the record concerning Claimant's ownership interest is: 1) The seized parcel was addressed to Claimant; and 2) Claimant's assertion at her deposition that the Defendant Currency is "[her] money."  Whether this evidence is sufficient to meet even the low threshold the Ninth Circuit described in $133,420.00 in U.S. Currency is a close question. Notably, however, in light of Claimant's very broad invocation of

her Fifth Amendment privileges to withhold testimony,[1] there is
little Claimant could testify to at trial.  See id. at 640-42
(providing that in a forfeiture proceeding, the court may strike
the testimony of a witness who previously invoked her Fifth
Amendment privilege to prevent the "witness's improper use of the
Fifth Amendment privilege against self-incrimination as a sword as
well as a shield.").  As such, Claimant would very likely have to
rely on the testimony of others to present additional evidence at
trial.[2]  Thus, although the Court does not go so far as to find
Claimant's proposed amendment futile, this factor does not provide
a countervailing reason to negate the previous three factors.

     In sum, Claimant's proposed amendment to the Claim would
fundamentally change her theory of standing after the close of
discovery.  Claimant has provided no reason for the nearly two-year
delay in amendment despite having knowledge of all of the facts
underlying the amendment and a straightforward legal landscape.
Finally, Claimant would be prejudiced and these proceedings would

-----

     [1] Because the issue has not been presented, the Court
assumes without deciding that Claimant properly invoked her Fifth
Amendment privilege.

     [2] This point underscores the prejudice to Plaintiff that
would be caused by the amendment of the Claim.  Because, as
discussed below, Claimant has failed to carry her burden to
demonstrate standing through her alleged possessory interest,
deposing such potential witnesses would be unnecessary and
wasteful under Claimant's possessory interest theory of standing.
Under Claimant's proposed ownership theory, however, deposing
such witnesses would be a vital aspect of Plaintiff's discovery.


12 - OPINION AND ORDER

be unduly extended by the amendment because it would require substantial additional discovery after its initial closure.

Accordingly, Claimant's Motion is precisely the sort of late amendment "to assert new theories" that is not reviewed favorably because "the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." See Acri, 781 F.2d at 1398. Thus, the Court denies Claimant's Motion for Leave to Amend Claim and Claimant must proceed under her alleged possessory interest.

## II.  **Plaintiff's Motion to Strike or for Summary Judgment**

Plaintiff moves to strike the Claim or, in the alternative, for summary judgment on the ground that Claimant has failed to establish a sufficient possessory interest to confer standing. "The elements of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" $133,420.00 in U.S. Currency, 672 F.3d at 638 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

At the motion to strike stage, a claimant alleging a possessory interest in the defendant property "must offer some 'factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the

13 – OPINION AND ORDER

property.'"    Id. (quoting United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 498 (6th Cir. 1998)).    "'Mere *unexplained possession* will not be sufficient.'"    Id. (quoting United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1057 (9th Cir. 1994)) (emphasis in original).    See also $999,830.00 in U.S. Currency, 704 F.3d at 1042-43.

> Claimant's factual allegations in her Claim read, in full:
>
> Undersigned Declarant Donna Dickson has a possessory interest in all the property seized, as referenced above. When this property was seized there were no controlled substances discovered, nor any criminal activity of any sort.    There was no underlying basis to seize this currency other than the fact it was currency.

Declaration of Claim (#6) at 1-2.    Thus, the only factual allegation in the Claim concerning the nature of Claimant's possessory interest is that Claimant "has a possessory interest in all the property seized."    Id.    Such a conclusory allegation plainly fails to "offer some 'factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property.'"    See $133,420.00 in U.S. Currency, 672 F.3d at 638.    Thus, Claimant fails to allege a possessory interest sufficient to survive a motion to strike for lack of standing.

Even considering Claimant's deposition testimony and the rest of the record on summary judgment, Claimant falls well short of carrying her burden to demonstrate standing.    At the summary

14 - OPINION AND ORDER

judgment stage, "a claimant asserting a possessory interest must provide some 'evidence supporting [her] assertion that [she] has a lawful possessory interest in the money seized.'"  Id. at 639 (quoting <u>United States v. $321,470.00 in U.S. Currency</u>, 874 F.2d 298, 303 (5th Cir. 1989)).  "'Unexplained naked possession of a cash hoard . . . does not rise to the level of the possessory interest requisite for standing to attack the forfeiture proceeding' at the summary judgment stage." Id. (quoting <u>United States v. $42,500.00 in U.S. Currency</u>, 283 F.3d 977, 983 (9th Cir. 2002)).  At summary judgment a claimant asserting a possessory interest must offer evidence of an "explanation of how [she] came to possess the money seized." Id. at 640.

As noted, in addition to the brief factual allegations in the Claim, the only relevant facts before the Court on summary judgment are that Claimant was the addressee of the parcel and that she testified that it was "[her] money."  Claimant's Dep. at 26. Claimant offered no explanation of how she came to have her possessory interest in the Defendant Currency.  In fact, to the contrary, Claimant invoked her Fifth Amendment privilege each of the several times she was asked to explain her possessory interest. Claimant's Dep. at 26, 34, 47.  Thus, because Claimant has not provided any evidence of any "explanation of how [she] came to possess the money seized," Claimant has failed to carry her burden

of demonstrating standing at the summary judgment stage. <u>See</u>
<u>$133,420.00 in U.S. Currency</u>, 672 F.3d at 640.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, Claimant's Amended Motion for Leave
to File Amended Claim (#36) is DENIED. Plaintiff's Motion for
Summary Judgment or to Strike Claim (#31) is GRANTED and Claimant's
Declaration of Claim (#6) is STRICKEN. Because Claimant lacks
standing to contest the forfeiture of the Defendant Currency,
Claimant's Motion to Suppress All Evidence Obtained from Package
Seized Per Search Warrant (#30) is DENIED as moot.

IT IS SO ORDERED.

DATED this *30* day of September, 2014.

Malcolm F. Marsh
United States District Judge